—in extremis; it must be the declaration of a dying man who is sensible of his situation.

The witness, Mr. Jamieson, stated that the declarations were made two days before the deceased became speechless and insensible, and three days before his death; that he was sensible of great danger of approaching death. Upon this testimony and considering the cases cited, THE COURT nem. con. admitted the declarations to be given in evidence, as to facts stated by the deceased but not as to his opinion of Veitch's motives, or malice.

## Case No. 16,615.

### UNITED STATES v. VENABLE.

[1 Cranch, C. C. 416.] [1]

Circuit Court, District of Columbia. July Term, 1807.

PASSING COUNTERFEIT MONEY.

The delivery of counterfeit money to a person to be passed off generally, for the benefit of the prisoner is not a passing "in payment," within the act of assembly of Virginia of December 19, 1792.

Indictment [against Joseph Venable] for passing counterfeited coin, contrary to Act Va. Dec. 19, 1792, p. 249, whereby the passing of such coin, "in payment," is punishable with death.

THE COURT, at the prayer of the prisoner's counsel, Mr. Swann, instructed the jury that if they should be satisfied, by the evidence, that the prisoner, knowing it to be counterfeit, passed the money to Brooke, with intent that Brooke should pass it away generally, for their joint benefit, or even for the sole benefit of the prisoner, it was not a passing in payment, within the meaning of the act of assembly, unless they should also be satisfied that the prisoner had given Brooke express orders to pay some certain debt due from the prisoner with that money, and the debt had been so paid; in which case, perhaps, there may be doubt. But if the prisoner passed the false money knowingly to Brooke, in payment for good money, it was a passing in payment within the meaning of the act.

DUCKETT, Circuit Judge, absent. Verdict, not guilty.

[See Case No. 16,616.]

## Case No. 16,616.

### UNITED STATES v. VENABLE.
### UNITED STATES v. BROOKE.

[1 Cranch, C. C. 417.] [1]

Circuit Court, District of Columbia. July Term, 1807.

PASSING COUNTERFEIT MONEY—ACQUITTAL—BOND FOR GOOD BEHAVIOR.

After acquittal upon a charge of passing counterfeit money, "in payment," the court will

not order the prisoners to give security for their good behavior, although it should appear in evidence that they had uttered false money, as true.

Mr. Jones, attorney for the United States, moved the court, that the prisoners [Venable and Brooke], who had been acquitted of passing counterfeit money, "in payment," under the act of Virginia of December 19, 1792, should be ordered to give security for their good behavior, it having appeared in evidence that they had uttered counterfeit money, but not "in payment."

Motion overruled. DUCKETT, Circuit Judge, absent.

[See Case No. 16,615.]

## Case No. 16,617.

### UNITED STATES v. The VENUS.

[See Case No. 16,914.]

## Case No. 16,618.

### UNITED STATES v. VERMILYE et al.

[10 Blatchf. 280; [1] 6 Am. Law T. Rep. 78.]

Circuit Court, S. D. New York. Dec. 27, 1872. [2]

NEGOTIABLE INSTRUMENTS—UNITED STATES "SEVEN-THIRTY NOTES"—RESTRICTION OF NEGOTIABILITY—BAILMENT—RIGHTS OF CARRIER.

1. An obligation of the United States, commonly called a "seven-thirty note," issued under the act of March 3, 1865 (13 Stat. 468), payable to the order of        , and not having the name of any person filled into such blank space, is in the same condition as if payable to bearer, and is, therefore, negotiable by delivery.

2. The writing of anything on the back of such note, while such blank is not filled up with the name of a payee, does not amount to an endorsement on, or of, such note, in the sense of that word, in the law merchant, so as to restrict the negotiability of the note, or to make it non-negotiable by delivery merely.

3. A person who purchases such a note after its maturity, and after the time for its conversion into bonds has passed, takes nothing but the actual right and title of his vendor.

4. Such a note is not money, but is only evidence of the indebtedness of the United States for money borrowed.

5. A carrier of such a note, for hire, has such a special property in it, that, if it be stolen from him, and be found in the possession of a person who took it after maturity, and who shows no better title to it than the title of the thief, the carrier may recover it from such person, by action.

6. The carrier, on paying the value of the note to his bailor, becomes the equitable assignee of the title of the bailor to the note.

[This was a bill of interpleader filed by the United States against Washington R. Vermilye and others, composing the firm of Vermilye & Co., and the Adams Express Company.]

[1][Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirmed in 21 Wall. (88 U. S.) 138.]